**Carolyn QUINCHETT, on behalf of Claimant Anthony William Wells, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

No. C2–00–1083.

United States District Court, S.D. Ohio, Eastern Division.

Aug. 20, 2001.

Michael N Beekhuizen, Thompson Hine, LLP, Columbus, OH, for plaintiff.

Randall Eugene Yontz, United States Attorney's Office, Columbus, OH, for defendant.

## ORDER

GRAHAM, District Judge.

On June 19, 2001, the Magistrate Judge issued a Report and Recommendation recommending that the Commissioner's decision denying eligibility for SSI benefits to Anthony William Wells be reversed. The Commissioner has now filed objections to that Report and Recommendation, and the plaintiff has responded. For the following reasons, the Court will overrule the objections and adopt the Report and Recommendation.

As the Report and Recommendation notes, the key issue in this case is whether the trust established for the benefit of Anthony William Wells is a countable resource for SSI purposes. If it is, the parties agree that Anthony is ineligible for SSI. If it is not, the parties agree that he is eligible. The parties also agree that the issue is to be determined with reference to Ohio law. However, they disagree on at least two points: whether the Commissioner's decision in this case is primarily factual or primarily legal (and thus whether the correct standard of review is the substantial evidence standard or review *de novo*) and whether the Commissioner's decision, whether factual or legal in nature, is supportable. It is necessary to address the first question before answering the second.

The Magistrate Judge concluded that the issue in this case was primarily, if not exclusively, a legal one, and that this Court could therefore review the Commissioner's determination *de novo*. The Commissioner objects to that determination, asserting that the determination of a set-

tlor's intent in creating a trust is "inherently a factual determination." Objections, at 8. This Court does not believe that, under Ohio law, the issue of a settler's intention in creating a trust is always, or even often, a factual issue to be determined by reference to evidence outside the language of the trust itself. It is black-letter Ohio law that "[t]he construction of contracts and instruments of conveyance is a matter of law," *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), syllabus ¶ 1, and that "[t]he agreement of the parties to a written contract is to be ascertained from the language of the instrument . . . [and] evidence cannot be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument." *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), syllabus. As the Magistrate Judge noted, Ohio courts apply the same principles of construction to trusts as they do to other written instruments. *Domo v. McCarthy*, 66 Ohio St.3d 312, 314, 612 N.E.2d 706 (1993). At a minimum, therefore, the Court can review *de novo* the question of whether the language of the trust instrument in this case is sufficiently clear and unambiguous to permit the Court to divine the settlor's intention as a matter of law. If it is, the Court does not owe any special deference to the decision of the Commissioner.

■ The Magistrate Judge's Report and Recommendation analyzes the only Ohio case on point, *Cleveland Trust Co. v. Pomeroy*, 87 Ohio L.Abs. 502, 177 N.E.2d 410 (Cuyahoga Cty. Common Pleas 1961), at some length, and the Court will not repeat that analysis. The Court agrees with the Commissioner that *Cleveland Trust Co.* is not a binding decision, but agrees with the Magistrate Judge that the Ohio Supreme Court would likely follow the method of analysis set forth in that decision and determine that the trust in this case, which by its terms was made irrevocable and which, by its terms, names the State of Ohio as a contingent beneficiary, was intended to be a trust agreement and was intended to confer at least a conditional benefit on the State of Ohio. If both of those conclusions are accepted, the existence of the contingent beneficiary makes the trust irrevocable and precludes it from being counted as an asset for SSI purposes. The Court does not believe that reference to the circumstances under which the trust was established is necessary in order to reach the legal conclusion that it is an irrevocable trust.

However, even if the factual circumstances are taken into account, and even if the Court reviews the Commissioner's decision under the substantial evidence standard, the result in this case would not change. Apparently, the Commissioner faults the claimant for having set up a trust which was intended to allow the claimant to obtain governmental benefits to the full extent that the law permits him to do so. For example, the language in the trust was drafted expressly in order to permit the trust to be a "Medicaid-qualifying trust" so that Anthony William Wells could continue to receive Medicaid benefits notwithstanding the fact that he obtained a substantial settlement in his personal injury case. The law, however, allows persons in his situation to do precisely that. Similarly, it appears that he made the trust irrevocable, under circumstances where that was not necessary in order to qualify for Medicaid benefits, so that he could also continue to receive SSI benefits. The law also permits a beneficiary of an irrevocable trust to receive SSI benefits. It is not reasonable to infer that the claimant's attempt to take advantage of the law is evidence of his lack of intent to create an irrevocable trust which would allow him to continue to receive SSI benefits. Consequently, to the extent that the Commis-

sioner's decision rests on a factual determination that it was not the claimant's intent to establish an irrevocable trust or that it was not his intent to have the State of Ohio be a contingent beneficiary, the Court rejects that conclusion as not being supported by substantial evidence.

For the above reasons, the objections to the Magistrate Judge's Report and Recommendation (file doc. # 13) are OVERRULED and the Report and Recommendation (file doc. # 10) is ADOPTED. The plaintiff's motion for summary judgment is GRANTED, the Commissioner's motion for summary judgment is DENIED, and this matter is REMANDED to the Commissioner with instructions to disregard the corpus of the trust for purposes of determining Anthony William Wells' countable resources in connection with his claim for SSI benefits. The Clerk is directed to enter judgment to that effect.

### REPORT AND RECOMMENDATION

KEMP, United States Magistrate Judge.

Plaintiff, Carolyn Quinchett, acting on behalf of her son, claimant Anthony William Wells ("claimant"), filed this action seeking review of a final decision of the Commissioner terminating supplemental security income benefits for Anthony Wells, a disabled child. The decision was based upon a determination by the Appeals Council, reversing a decision of the Administrative Law Judge, that a special needs trust established for Anthony William Wells was revocable and was therefore a countable resource for supplemental security income eligibility purposes.

Plaintiff filed this civil action in order to obtain judicial review of the Appeals Council's decision of July 20, 2000. The record of administrative proceedings was filed in this Court on November 17, 2000. Plaintiff moved for summary judgment on December 13, 2000, and the Commissioner

responded on February 12, 2001. Plaintiff filed a reply brief on February 20, 2001. The matter is now ripe for decision. For the following reasons, it will be recommended that plaintiff's motion for summary judgment be granted.

### I.

This matter began when claimant's attorney, Thomas J. Bonasera, sent a copy of the Anthony William Wells irrevocable special needs trust for supplemental services to the Social Security Administration on June 25, 1997. The trust was established with proceeds received from a personal injury settlement. The letter inquired whether, in light of the establishment of the trust, claimant would continue to be entitled to SSI benefits which he had been receiving following a disabling injury.

Initially, it was determined that the assets of the trust were countable for SSI purposes and that claimant's benefits would cease effective October 1, 1997. On October 7, 1998, a reconsideration decision was issued which affirmed the initial denial. A hearing was then held before an Administrative Law Judge.

The first witness at the hearing was claimant's mother, Carolyn Quinchett. She testified that Anthony was found at the bottom of a swimming pool at Wyandot Lake on August 3, 1991, as a result of which he suffered significant injuries. (Tr. 115). He was twelve years old at the time, and spent two months in the hospital. (Tr. 116). Medicaid has been paying his medical bills. (Tr. 117).

The trust in this case was established with the proceeds of a lawsuit that was filed concerning Anthony's accident. Ms. Quinchett testified that, with respect to the trust, she is able to obtain money from the trust for her son's needs, but is required to

channel requests for funds through the trustee's paralegal. (Tr. 118–19).

The second witness at the administrative hearing was William S. Fein, an attorney. Mr. Fein testified that there were certain types of trusts authorized by federal and Ohio law which permitted the beneficiary of the trust to retain Medicaid eligibility. The trust must be written so that upon the death of the beneficiary, the assets of the trust are payable to the State of Ohio in an amount equal to what the state has expended in medical assistance under the Medicaid program. (Tr. 124). Mr. Fein testified that trust in this case was set up to do exactly that, and was approved by the Franklin County Probate Court. (Tr. 124). Because there is a residual beneficiary of the trust, Mr. Fein believed the trust was not revocable. Mr. Fein expressed the opinion that under social security regulations, and particularly the program circular involved here (Circular 95–07), if a trust has no beneficiary other than the person who establishes it, it is revocable even if the language of the trust says otherwise, but if there is another beneficiary, it is irrevocable and should not be counted for purposes of SSI eligibility. In his view, because the State of Ohio was a vested beneficiary of the trust, the trust was not revocable and should not be counted toward SSI eligibility. (Tr. 127).

A copy of the trust was introduced into evidence and appears in the record at pages 29 through 33. The grantor is Carolyn M. Wells, mother and natural guardian of Anthony William Wells, and the trustee is Key Trust Company of Ohio. It provides, in Article I, ¶ 3, that the grantor has no power to amend, alter, or revoke the trust, and that it is irrevocable. Article II permits the trustee to make distributions from the trust for the benefit of Anthony, the beneficiary. When the trust is terminated, any remaining principal is to be paid first for the cost and expenses of administration; second, to any state of the United States up to the total amount of medical assistance paid on behalf of the beneficiary; and, third, any remaining principal to the estate of the beneficiary. The trust assets include cash in the amount of $168,581.99, and monthly payments to be made commencing on February 20, 2004 and ending on February 20, 2051, having a present value of $100,000.

Based upon that evidence, the Administrative Law Judge concluded that the State of Ohio was a beneficiary of the trust. She therefore concluded that the trust was irrevocable, and that Program Circular 95–07, which indicates that references in a trust to the beneficiary's "estate" as being the ultimate beneficiary should not be viewed as creating a residual or contingent beneficiary that would make the trust irrevocable, was inapplicable to this trust. Consequently, the Administrative Law Judge concluded that the assets of the trust were not countable for SSI purposes. (Tr. 15–24). The Appeals Council reversed that finding, concluding that the trust was revocable, notwithstanding language to the contrary, and that the funds in the trust were countable as resources for SSI eligibility purposes. (Tr. 5–10). It is that decision which plaintiff appeals.

## II.

The parties agree on the legal standards to be applied. Factual findings made by the Commissioner are reviewed to determine if they are supported by substantial evidence. Legal conclusions are reviewed *de novo*. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997). The parties appear to agree that the key finding in this case, whether the special needs trust is revocable or irrevocable, is a question of law which this Court reviews *de novo*.

### III.

The Court begins its analysis with the applicable statute, regulation, and interpretive guideline. The statute in question, 42 U.S.C. § 1382(a)(1)(B)(ii), provides that financial eligibility for supplemental security income benefits is based upon certain prescribed limits, and that if an individual's available resources or monthly income exceed those limits, he or she is not eligible for SSI benefits.

Although 42 U.S.C. § 1382(a)(1)(B)(ii) uses the terms "income" and "resources," "[t]he statute does not define the terms 'income' or 'resource.' Instead, the definition of those terms is provided in the regulations promulgated under the statute." *Frerks v. Shalala,* 848 F.Supp. 340, 344 (E.D.N.Y.1994), aff'd. 52 F.3d 412 (2d Cir.1995). The applicable regulation, 20 C.F.R. § 416.1201(a), defines a "resource" either to be cash or some other type of liquid asset which an individual can convert to cash. That regulation further states that if the SSI applicant "has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource."

Although the regulation contains a general definition of resources, it makes no specific reference to funds held in trust. There is language, however, in Social Security Administration Program Circular No. 95–07, issued on June 26, 1995 and found at Tr. 63–66, relating to the relationship between assets held in trust and SSI benefits. The circular recognizes that "[p]roperty held in a trust may or may not be considered as a resource for SSI purposes. The chief consideration in resource determinations involving trusts is whether the SSI recipient is empowered to revoke (or otherwise access) the trust and use the trust property for his/or support and maintenance...." The program circular specifically addresses the issue of whether someone who is both the settlor and sole beneficiary of a trust which, on its face, appears to be irrevocable, may nonetheless revoke the trust, thus causing the trust assets to be counted as resources for SSI eligibility purposes. The circular notes that "trust law in Region V permits a grantor, who is the sole beneficiary, to revoke a trust and use the trust principal for his/or support and maintenance.... If the grantor is not the sole beneficiary, he/she alone cannot revoke the trust. Therefore, the trust would not be a countable resource for SSI purposes." Finally, the circular notes that the "presence of a residual/contingent beneficiary, in addition to the grantor, preserves the irrevocability of the trust."

There appear to be no federal court decisions addressing the specific issue posed in this case, which is whether a Medicaid-qualifying trust that is irrevocable on its face is also a non-countable "resource" for SSI purposes because the trust has a contingent beneficiary (the State) in addition to the settlor. Federal decisions generally hold that similar issues about an SSI recipient's ability to access resources are governed by state law, so that the extent to which the beneficiary or grantor of the trust has the power to revoke the trust and access the trust corpus is determined by state law. *See Cannuni v. Schweiker,* 740 F.2d 260, 263 (3d Cir.1984); *Rosenfeld v. Secretary of HHS,* 563 F.Supp. 1192 (E.D.N.Y.1983). So, for example, if, under state law, the SSI claimant has the legal right to liquidate the asset in question, the resource is countable for SSI purposes. *Chalmers v. Shalala,* 23 F.3d 752 (3d Cir.1994). Thus, as the parties have correctly framed the issue, the question in this case is whether Ohio law would permit Anthony Wells (or someone acting on his behalf) to revoke the trust, notwithstanding its express declaration of irrevocability, thus making the trust assets countable for SSI eligibility purposes.

Both parties cite a single Ohio case, *Mumma v. Huntington National Bank,* 9 Ohio App.2d 166, 223 N.E.2d 621 (Franklin Cty.1967), as authority for their respective positions. *Mumma* confirms that the general rule recited in Program Circular 95–07 is applicable in Ohio. *Mumma* held that a trust established by the settlor which provided that the settlor was to receive an income distribution from the trust, but which also provided that the trustee could disburse sums for the maintenance, support, and education of the settlor's children, including unborn children, was a trust which had multiple beneficiaries. Consequently, because the grantor was not the sole beneficiary, he could not terminate the trust. Relying on *Mumma,* plaintiff asserts that because the State of Ohio may ultimately be repaid some or all of its Medicaid payments from the trust corpus, even though all of the net income of the trust and portions of the principal may be distributed for the benefit of Anthony Wells during his lifetime, the trust is irrevocable. The Commissioner, on the other hand, argues that the State of Ohio cannot be deemed to be a "beneficiary" of the trust because, at best, it will only receive reimbursement of sums expended for Anthony Wells' benefit during this lifetime. The Commissioner asserts that Ohio is therefore a "creditor" of the trust rather than a "beneficiary," that Anthony Wells is, in fact, both the settlor and the sole beneficiary, and that the trust is therefore both revocable and a countable resource for SSI purposes.

Although *Mumma* states the general rule applicable in Ohio, it obviously deals with a different fact situation. The Court believes there are valid reasons to view a creditor of the settlor as somewhat different from a child or other beneficiary who stands to receive a distribution from a trust. The Court will first discuss the general rules relating to trusts which are set up at least in the part for the benefit of creditors of the settlor, as described in II Fratcher, SCOTT ON TRUSTS, § 126.1 (4th Ed.1987) ("SCOTT"), and will then discuss the single Ohio case, *Cleveland Trust Co. v. Pomeroy,* 87 Ohio L.Abs. 502, 177 N.E.2d 410 (Cuyahoga Cty. Common Pleas 1961), which deals with that issue.

SCOTT recognizes that "[t]he owner of property can create a trust for his creditors...." *Id.* at 293. By doing so, however, the settlor does not automatically create an irrevocable trust. Where the settlor has transferred property to another person, whether or not designated as a trustee, with directions to pay money to creditors, "it is a question of his intention whether a trust is created and if so whether the creditors are beneficiaries of the trust." *Id.* SCOTT indicates that a number of different legal arrangements can exist when money is transferred to a third party to be used to pay creditors. For example, the arrangement can be a contract of which the creditors are third-party beneficiaries. Alternatively, the party to whom the property is transferred may simply be acting as an agent for the settlor, in which case no trust is created. In some cases, a trust may be implied, but the trust may be for the benefit of the debtor alone, in which case "the debtor can at any time revoke the authority of the trustee, since he is the sole beneficiary of the trust." *Id.* at 294. Finally, "if the creditor is a beneficiary, the debtor cannot revoke the trust unless expressly or by implication he reserved a power of revocation." *Id.* SCOTT also recognizes that the usual inference when a trust is created for the purpose of paying creditors is that the settlor "does not intend to create it for the creditor, but intends to create it only for his own benefit." *Id.* at 294–95.

*Cleveland Trust Co. v. Pomeroy, supra,* involved an interpretation of these rules.

There, the settlors created a trust agreement which named the Cleveland Trust Company as the trustee, and they assigned a significant amount of their property to the trust. The trust agreement stated that it was the settlor's intent to provide for the payment of certain obligations from the income or principal of the trust, including a promissory note owed to a third party, W.H. Cowles. The trust specifically indicated that it was irrevocable as to these obligations until all of the debts, including the debt to Cowles, had been paid. The court cited SCOTT with approval for the proposition that the status of a creditor as beneficiary of a trust depends upon the manifestation of intention of the debtor. The court noted that the designation of the Cleveland Trust Company, which had no specific relationship to any of the creditors, as a trustee under the trust itself manifested an intent to create a trust, because the Cleveland Trust Company was clearly not an agent representing the creditors and there was no evidence of new contractual arrangements through which the Cleveland Trust Company accepted personally the obligation to pay the creditors. *Cleveland Trust Co. v. Pomeroy,* 87 Ohio L.Abs. at 507–08, 177 N.E.2d 410. The court then addressed the issue of whether the trust was revocable or whether it could be enforced by the creditors. The court recognized, again citing to SCOTT, that the normal inference would be that the trust was created solely for the benefit of the settlors. However, the court found that the language of the trust agreement itself overrode this general principle. *Id.* at 509–10, 177 N.E.2d 410. As the court noted, the intent to create an irrevocable trust (which could have only occurred if the creditors were deemed to be beneficiaries) "is demonstrated by the language in the revocation paragraph wherein it is stated that there may be no revocation or recall until after the satisfaction of all of the obligations." *Id.* at 510, 177 N.E.2d

410. Having found "a clear intention on the part of the [settlors] to create a trust which was irrevocable ... the Court is bound to hold [the settlors] to [their] original intention...." *Id.*

This Court notes that, under Ohio Administrative Code § 5120:1–39–271, a Medicaid-qualifying special needs trust may be either revocable or irrevocable, so long as it specifies that the balance of the trust assets present at the beneficiary's death will be used to reimburse the state for Medicaid payments made on behalf of the beneficiary. Consequently, in order to qualify for Medicaid, the trust did not have to contain an express prohibition against revocation. Nonetheless, the trust itself is entitled "the Anthony William Wells Irrevocable Special Needs Trust for Supplemental Services," (Tr. 29), and it states, in Article I, ¶ 3, that "[t]he Grantor has no power to amend, alter or revoke any provisions of the Trust. This Agreement of Trust shall be irrevocable." *Id.* It would seem, following *Cleveland Trust Co. v. Pomeroy,* that this language, which was not necessary in order to have the trust be a Medicaid-qualifying trust, expresses an intention to go beyond what was required by the Ohio Administrative Code and to create an irrevocable trust which includes an obligation to pay sums owed to the State of Ohio. Such an intent is sufficient for the Court to find that, notwithstanding the State's status as a "creditor," it was also intended to be a beneficiary of the trust in addition to Anthony Wells or his estate. That would make the trust a noncountable resource for SSI purposes.

The Court recognizes that *Cleveland Trust Co. v. Pomeroy* is a Common Pleas Court decision and is not binding on this Court. It is, however, the only reported Ohio decision which appears to deal directly with the issue in this case. In adopting the rule that the language of the trust

agreement plays a significant role in determining the intent of settlor, and in following the analytical outline set forth in SCOTT which permits a settlor to create an irrevocable trust in favor of creditors, the *Cleveland Trust* decision appears consistent with both well-established principles of trust law and with decisions of the Ohio Supreme Court which hold that a written instrument is the primary source for determining the intent of the parties to that instrument. *See Domo v. McCarthy,* 66 Ohio St.3d 312, 314, 612 N.E.2d 706 (1993) ("when the language of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself"). Thus, the Court believes that the Ohio Supreme Court would likely follow the analytical method set forth in *Cleveland Trust Co. v. Pomeroy,* and would find the language of the trust to be the primary evidence of the settlor's intent with respect to whether or not the creditor named in the trust was intended to be a beneficiary, thus precluding the settlor from revoking the trust without the consent of that creditor.

Based upon the foregoing, the Court concludes that, as a matter of law, it was the intent of the claimant, Anthony Wells, acting through his mother and guardian, to create an irrevocable trust that names the State of Ohio as one of two beneficiaries. Although the Court recognizes the possibility that the trustee could sufficiently deplete the corpus of trust during the claimant's lifetime to render the benefit to the State of Ohio negligible, the case law is clear that even a contingent beneficiary must consent to the termination of a trust. The fact that the interest of the beneficiary may be defeated is not sufficient to render the trust revocable upon consent of the settlor if it is otherwise deemed to be irrevocable. Consequently, for all of these reasons, the Court concludes that the decision of the Commissioner is contrary to law and should be reversed. It is there-fore recommended that the plaintiff's motion for summary judgment be granted, that the Commissioner' motion for summary judgment be denied, and that the matter be remanded to the Commissioner with instructions to disregard the corpus of the trust for purposes of determining plaintiff's countable resources in connection with his claim for SSI benefits.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).