OPINION
{¶ 1} Margaret Witzleb ("Margaret"), Keith McCoy ("Keith"), and Thelma L. Witzleb ("Thelma") appeal from a judgment of the Greene County Court of Common Pleas, Probate Division, which concluded that the estate of Robert Melvin McCoy ("Robert") was entitled to a one-third share of the trust estate, including real estate, in accordance with a trust instrument executed by his mother, Hazel McCoy.
 {¶ 1} On January 17, 1991, Hazel McCoy executed an Irrevocable Trust Agreement and a pour-over will. Mrs. McCoy's three children — Keith, Robert, and Thelma — were named as the trust beneficiaries. Margaret Witzleb was named the trustee. On the day that the trust was created, Mrs. McCoy transferred certain real estate to Margaret as trustee. The trust was neither amended nor revoked during Mrs. McCoy's lifetime.
 {¶ 2} Hazel McCoy died on January 10, 1994. All three of her children survived her. Under the terms of the Trust Agreement, Robert received a life estate in certain real estate. Upon his death, that property was to be distributed to Keith, Thelma and Robert, in equal parts, under the remainder clause in the trust instrument. On November 17, 2002, nearly nine years later, Robert passed away.
 {¶ 3} On May 6, 2004, Lisa Marie McCoy ("Lisa Marie"), individually and as administrator of the estate of Robert McCoy, brought a declaratory judgment action against Margaret, Keith, and Thelma, seeking an order that she was the only child and sole heir of Robert McCoy and that she or Robert's estate was entitled to receive a one-third share of the trust assets, including the real estate. Margaret, Keith, and Thelma contested Lisa Marie's assertion that she was Robert's daughter, alleging that Robert was physically incapable of fathering children. They counterclaimed for real estate taxes that Margaret had paid from January 10, 1994, to November 17, 2002; for an order declaring that Thelma and Keith — not Lisa Marie — were Robert's sole surviving heirs; and for an order setting aside a deed from Robert to Lisa Marie.
 {¶ 4} On February 3, 2005, the trial court entered judgment in favor of Lisa Marie, concluding that Robert vested in a one-third share of the trust estate when he survived his mother, and that he was entitled, under paragraph 4.1(c) of the Trust Agreement, to a one-third share of all the trust estate, including the real estate, when it was to be distributed after his death. The court ordered Margaret, as trustee, to transfer one-third of all of the trust assets to Lisa Marie, as executor of Robert's estate. It indicated that Lisa Marie must account for those assets in the administration of Robert's estate. The court further indicated that it was irrelevant for purposes of this action whether Lisa Marie was, in fact, Robert's daughter.
 {¶ 5} Margaret, Keith and Thelma raise three assignments of error on appeal, which we address in a manner that facilitates our analysis.
 {¶ 6} II. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO FOLLOW THE UNAMBIGUOUS LANGUAGE OF THE TRUST DOCUMENT[,] GOING BEYOND ITS JURISDICTION IN APPLYING INCORRECT STANDARDS[,] AND IN FAILING TO RECOGNIZE THE BROAD POWERS OF THE TRUSTEE IN ACCORDANCE WITH THE TERMS OF THE TRUST."
 {¶ 7} In their second assignment of error, Appellants claim that the determination of whether Robert was entitled to a share of the trust estate was a matter within the trustee's discretion and that the court had no power to interfere with this determination.
 {¶ 8} "[T]he powers and duties of a trustee are controlled by the terms of the trust instrument." Daloia v. Franciscan HealthSys. of Cent. Ohio, Inc., 79 Ohio St.3d 98, 102, 1997-Ohio-402,679 N.E.2d 1084. In this case, the broad powers of the trustee were set forth in paragraphs 3.1 and 4.3 of the Trust Agreement. Paragraph 3.1 of the trust agreement specified the powers of the trustee during the grantor's life. Paragraph 4.3 detailed the trustee's authority after the grantor's death. Both paragraphs stated:
 {¶ 9} "Trustee is authorized to do all things necessary or desirable in her complete discretion to manage this trust and, by way of illustration and not in limitation of her powers, to do any and all of the following without order of the court: To compound, compromise, settle and adjust all claims and demands in favor of or against the estate, and to assign, transfer, exchange, convey or sell at private or public sale, at such prices and upon such terms of credit or otherwise as she may deem best, the whole or any part of my real estate or personal property, and to execute, acknowledge, and deliver deeds and other proper instruments of conveyance therefor to the purchaser or purchasers."
 {¶ 10} As noted by Lisa Marie, the powers delineated by paragraphs 3.1 and 4.3 concern the trustee's ability to manage the trust assets. Although the trustee was granted the authority to settle claims, such as this litigation, that authority does not extend to a unilateral unreviewable determination that a claim against the trust estate lacks merit. As for the distribution of the trust estate, paragraph 4.1 dictates which trust assets are to be distributed to whom and in what amounts. Issues concerning the interpretation of the provisions of the trust, such as whether an individual is a beneficiary under paragraph 4.1, clearly fall within the province of the court. SeeIn re Trust of Brooke, 82 Ohio St.3d 553, 557, 1998-Ohio-185,697 N.E.2d 191 (indicating the court's duty in construing the provisions of a trust); see also R.C. 2101.24(B)(1) (granting concurrent jurisdiction to the probate court and the general division of the court of common pleas to hear an action and issue order concerning an inter vivos trust); In re Guardianship ofLombardo, 86 Ohio St.3d 600, 603, 1999-Ohio-132, 716 N.E.2d 189. Accordingly, the trial court acted properly when it exercised jurisdiction over this matter and declined to defer to Margaret's determinations, as trustee, regarding the merits of Lisa Marie's claims.
 {¶ 11} The second assignment of error is overruled.
 {¶ 12} III. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN IGNORING ALL MOTIONS FILED; IN REFUSING TO GRANT SEPARATE FINDINGS OF FACT AND CONCLUSIONS OF LAW AND REFUSING DISCOVERY."
 {¶ 13} In their third assignment of error, Appellants assert that the trial court erred in failing to address numerous motions prior to granting judgment in favor of Lisa Marie and in failing to provide separate findings of fact and conclusions of law.
 {¶ 14} At the time that the court granted judgment to Lisa Marie, the following motions remained pending: (1) Defendants' motion for judgment on the pleadings as to Lisa Marie's entitlement to a share of the trust estate, filed May 28, 2004; (2) Defendants' motion to compel discovery, filed May 28, 2004; (3) Lisa Marie's motion to strike discovery requests, filed June 9, 2004; (4) Lisa Marie's motion to dismiss the counterclaims, filed June 9, 2004; (5) Lisa Marie's motion for judgment on the pleadings, filed June 9, 2004; (6) Defendants' motion to strike and for time to further plead, filed June 28, 2004; (7) Defendants' motion to dismiss for lack of jurisdiction and for judgment on the pleadings, filed September 3, 2004; and (8) Defendants' request for procedendo and for court reporter, filed November 10, 2004.
 {¶ 15} To the extent that the trial court did not rule on the pending motions, we presume that the trial court denied those motions. Pentaflex v. Express Servs., Inc. (1998),130 Ohio App.3d 209, 217, 719 N.E.2d 1016. It is well-established that "[w]hen a trial court fails to rule upon a motion, it will be presumed that it was overruled." Georgeoff v. O'Brien (1995),105 Ohio App.3d 373, 663 N.E.2d 1348; Schaeffer v. NationwideMut. Ins. Co., Greene App. No. 2001CA131, 2002-Ohio-4811, ¶ 32.
 {¶ 16} Upon review of the judgment, it appears that the court implicitly addressed several of Appellants' motions therein. By entering a judgment in this matter, the trial court clearly believed that it had jurisdiction over this action. The parties agreed that the determination of whether Robert's estate was entitled to a one-third share of the trust assets depended upon an interpretation of the Trust Agreement, which was attached to the pleadings. Thus, the court's judgment was akin to a ruling on the motions for judgment on the pleadings in favor of Lisa Marie. Moreover, in granting judgment, the trial court ruled that whether Lisa Marie was a child of Robert was "irrelevant." Thus, the court implicitly found no basis to compel discovery of Robert's medical records. To the extent that the trial court implicitly ruled on Appellants' motions, we find no error.
 {¶ 17} Appellants next assert that the trial court erred in failing to provide separate findings of fact and conclusions of law. Upon review of the judgment, we find that the trial court provided adequate findings to support its judgment. Although Appellants may have desired more detailed findings, the trial court made the necessary findings to enter judgment in favor of Lisa Marie.
 {¶ 18} The third assignment of error is overruled.
 {¶ 19} I. "TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS AS A MATTER OF LAW IN HOLDING THAT ROBERT MELVIN McCOY HAD A VESTED INTEREST IN THE PROPERTY AND IN ORDERING ITS DISTRIBUTION TO HIS ESTATE."
 {¶ 20} In their first assignment of error, Appellants assert that the trial court erred in finding that Robert had a vested one-third share in the trust assets.
 {¶ 21} Section 4 of the Trust Agreement set forth the manner in which the trust was to be administered after the death of the grantor, Mrs. McCoy. Section 4.1 established the distribution of the trust estate. Under sections 4.1(a) and 4.1(b), Mrs. McCoy indicated the distribution of certain real estate. Section 4.1(a) granted Keith the option, upon Mrs. McCoy's death, to purchase the one acre of real estate upon which the house is located. Section 4.1(b) granted Robert a life estate in the use of "the remainder of the said real estate" and indicated that, upon his death, the property would be distributed under the terms of section 4.1(c). Section 4.1(c) provided:
 {¶ 22} "The rest and residue of the Trust Estate to Grantor's children, namely, ROBERT MELVIN McCOY, KEITH McCOY, and THELMA L. WITZLEB to be divided among them equally or, if any of Grantor's children have predeceased her, then the share of such predeceased child shall be distributed to his or her issue, per stirpes."
 {¶ 23} Appellants assert that the trial court incorrectly concluded that the language of the trust gave Robert a life estate and then a one-third remainder to him upon his death. They contend that the trust granted Robert only the use of the property during his lifetime. They further note that, pursuant to paragraph 4.1(b), upon Robert's death, "said real estate shall be distributed under the terms stated in paragraph 4.1c." Thus, they argue, because real property cannot be conveyed to a deceased person and the real estate herein would not be distributed until after Robert's death, Robert (or, rather, his estate) was not entitled to a share of the real property under paragraph 4.1(c). Moreover, they argue that the trial court's construction of the trust resulted in Robert holding a life estate and a vested remainder interest in the real property at the same, a situation which Appellants argue is not permitted by Ohio property law.
 {¶ 24} In the present, we are concerned with the distribution of property in accordance with the terms of a trust, not under property law. "When construing provisions of a trust, our primary duty is to `ascertain, within the bounds of the law, the intent of the * * * settlor.'" Brooke, 82 Ohio St.3d at 557, quotingDomo v. McCarthy (1993), 66 Ohio St.3d 312, 314,612 N.E.2d 706, 708. The settlor's intention is determined by considering the language used in the trust, reading all the provisions of the trust together. Mumma v. Huntington Nat'l Bank of Columbus
(1967), 9 Ohio App.2d 166, 169, 223 N.E.2d 621, citing 53 Ohio Jurisprudence 2d 425, § 22. When the terms of the trust are not ambiguous, the intent of the settlor can be determined by the express language of the trust. Daloia, 79 Ohio St.3d at 103. Words used in the trust instrument are presumed to be used according to their common, ordinary meaning. Brooke,82 Ohio St.3d at 557.
 {¶ 25} Here, paragraph 4.1(c) of the trust instrument granted Mrs. McCoy's three children — Keith, Thelma, and Robert — an equal one-third share remainder interest in the trust estate. Thus, at the instant of creation of the trust, Keith, Thelma and Robert obtained a vested equitable interest in the remainder, subject to defeasance in whole or in part by the exercise of the power to revoke or to modify. See Smyth v. Cleveland Trust Co.
(1961), 172 Ohio St. 489, 501-02, 179 N.E.2d 60, paragraph one of the syllabus. The trust was neither revoked nor amended during Mrs. McCoy's lifetime. Thus, at the time of Mrs. McCoy's death, the children's vested one-third remainder interest became indefeasible.
 {¶ 26} Appellants argue that Robert did not predecease his mother and, therefore, the phrase "then the share of such predeceased child shall be distributed to his or his issue, per stirpes" does not apply and his estate should receive no interest in the real property. We agree that because Robert survived his mother, the phrase does not apply. However, Appellants are incorrect that his estate cannot receive a share of the remainder as a result. Remainders are descendible, devisable, and alienable in the same manner as estates in possession. R.C. 2131.04; FirstNat'l Bank of Cincinnati v. Tenney (1956), 165 Ohio St. 513,519, 138 N.E.2d 15.
 {¶ 27} The pivotal question, therefore, is whether Mrs. McCoy manifested an intent for the real estate at issue to be distributed only to those of Mrs. McCoy's children who survived after Robert's death. Upon review of the trust instrument, she did not. According to paragraph 4.1(b), upon Robert's death, the real estate was to be "distributed under the terms stated in paragraph 4.1c." The only reasonable interpretation of this phrase is that, upon Robert's death, the real estate would become part of the remainder to be distributed according to paragraph 4.1(c). As stated above, Robert had a vested one-third remainder interest in the trust estate which was descendible and devisable. Accordingly, although Robert was necessarily deceased when the real estate was to be distributed, the trial court properly concluded that his estate was entitled to a one-third share when it was distributed under paragraph 4.1(c).
 {¶ 28} The first assignment of error is overruled.
 {¶ 29} The judgment of the trial court will be affirmed.
Grady, J. and Donovan, J., concur.